629 F.2d 518
 6 Fed. R. Evid. Serv. 1022
 GREENWOOD RANCHES, INC., Appellee/Appellant,
v.
SKIE CONSTRUCTION CO., INC., Ace Irrigation & Mfg. Co., and
Vallery RiverRanch, Inc., Appellants/Appellees.
 Nos. 80-1009, 80-1010, 80-1011 and 80-1031.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1980.
Decided Aug. 11, 1980.
 
 Ronald E. Clabaugh, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S. D., for appellant, Vallery River Ranch.
 Charles H. Whiting & Hagg, Rapid City, S. D., for Ace Irrigation, etc.
 William G. Porter, Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, S. D., for Skie Construction Co.
 Gregory A. Eisesland, Lynn, Jackson, Shultz & Lebrun, Rapid City, S. D., argued for Greenwood Ranches; Gene N. Lebrun, Rapid City, S. D., on brief.
 Before HEANEY and ARNOLD, Circuit Judges, and OVERTON,* District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 Greenwood Ranches, Inc., brought this action against Skie Construction Co., Inc., to recover damages for losses sustained in connection with Skie's installation of an irrigation system on farmland owned by Greenwood. Greenwood predicated Skie's liability on alternate theories of negligence and breach of contract.[1] Skie in turn counterclaimed for $5,500 allegedly owing on its contract with Greenwood, and filed a third-party complaint seeking contribution or indemnity against Vallery River Ranch, Inc., the irrigation system's designer and supplier of pipe, and Ace Irrigation & Manufacturing Co., the manufacturer of the irrigation system's pipe.[2] In accord with Fed.R.Civ.P. 14, Greenwood then filed a new pleading making negligence, breach-of-warranty, and breach-of-contract claims against Vallery, together with negligence and breach-of-warranty claims against Ace.[3] The jury returned liability findings and special verdicts against Skie, Vallery, and Ace, apportioning negligence among these three parties and assessing damages on each theory of liability. In addition, the jury found in favor of Skie on its counterclaim against Greenwood. The District Court added up the verdicts and entered separate judgments against Skie, Vallery, and Ace in the full amount of all the verdicts put together, as more fully explained below. Following South Dakota law, the District Court denied Skie's and Vallery's claims for indemnification against Ace because of the jury's finding that all three defendants had been negligent.[4] Subsequently, the District Court denied various motions by Skie, Vallery, and Ace to alter or amend the judgment, for judgment notwithstanding the verdict or, in the alternative, for a new trial.
 
 
 2
 Skie, Vallery, and Ace appeal. Each contends that the District Court erred in entering judgment against it by cumulating verdicts on alternate theories of liability, as well as in making certain evidentiary rulings. We agree in part with appellants' contentions. We therefore vacate the judgment and remand for a new trial limited solely to the issue of damages.[5]
 
 
 3
 I. Background.
 
 
 4
 Greenwood is a family-owned Wyoming corporation which owns 21,000 acres of an approximately 45,000-acre ranch. The ranch is located in Colony, Wyoming, near the borders of Montana and South Dakota in the northeastern corner of the state. Members of the James Newland family own the Greenwood capital stock and the remainder of the ranch land. The ranch operates principally as a livestock concern. The Newlands buy and sell livestock, and Greenwood leases portions of the ranch land for grazing. Greenwood itself, however, owns no animals. Livestock is owned individually by James Newland, one of his two sons, Wilbur Newland, and three ranch employees.
 
 
 5
 James Newland's other son, Robert Newland, returned to the ranch in 1970 after attending college for one year. With the intention of increasing the livestock operation's self-sufficiency, in 1973 Robert began to try to improve parts of the ranch land used for grazing. Thereafter he engaged in both dryland and irrigation farming to produce crops for animal feed. By 1976 he contemplated the installation of an irrigation system on 600 acres of ranch grassland owned by Greenwood so that the land could be farmed. From February through early May 1977 a dam was constructed near the grassland field to provide water for irrigation.[6]
 
 
 6
 During this period of time Newland entered into an oral agreement with Vallery for the design and installation of the water-transfer portion of the irrigation project.[7] The water-transfer system was to include pumps, motors, and polyvinyl chloride (PVC) pipe. On January 11, 1977, Greenwood contracted with Skie for the ground trenching and installation of the PVC pipe. Ace supplied the PVC pipe for the water-transfer system to Vallery, which was its dealer.
 
 
 7
 Construction of the system began in late April or early May 1977. Skie and Vallery completed their installation of the system in late June 1977, but testing revealed numerous leaks. Through July 1978 Ace attempted to repair the system and from then until September 1978 continued to do so under contract with Greenwood. As of trial in the Fall of 1979 the system had failed to function as contemplated.
 
 
 8
 The District Court ultimately submitted Greenwood's case against Skie on alternate theories of breach of contract and negligence; its case against Vallery, on theories of breach of express or implied warranties, breach of contract, and negligence; and its case against Ace, on theories of breach of express or implied warranties and negligence. Following a three-week trial the jury returned special verdicts[8] awarding damages and apportioning negligence as follows:
 
 
 9
 The district court thereafter entered judgments in favor of Greenwood against each of the appellants as follows:
 
 
 10
 (1) Against Skie (after credit for Skie's
 
 
 11
 $5,500 counterclaim recovery): $43,915.66
 
 
 12
 (2) Against Vallery: 101,782.92
 
 
 13
 (3) Against Ace: 111,185.03
 
 
 14
 II. Analysis.
 
 
 15
 A. Cumulating verdicts.
 
 
 16
 Although each appellant casts its argument in slightly different form, appellants essentially object to the cumulation of verdicts rendered on alternate theories of liability. We agree.
 
 
 17
 In its original and third-party complaints as well as throughout trial Greenwood sought to recover damages flowing essentially from a single transaction, the water-transfer system's failure to operate properly, on alternate theories of liability. Greenwood sought relief under each count of its complaints for crop loss and for money expended on the system. Greenwood's causes of action are simply alternate theories for seeking the same relief. In this situation, a plaintiff is not entitled to a separate compensatory damage award under each legal theory. On the contrary, he is entitled only to one compensatory damage award if liability is found on any or all of the theories involved. Clappier v. Flynn, 605 F.2d 519, 529 (10th Cir. 1979). See generally Cunningham v. M-G Transport Services, Inc., 527 F.2d 760 (4th Cir. 1975) (per curiam). Greenwood's claim for damages cannot be multiplied by the number of theories under which the claim is asserted. And yet the district court's addition of verdicts assessing damages under alternate theories of liability seems to have this effect.[9] Nor can we agree with Greenwood that the point was waived by failure to object before the jury retired. It was not clear to counsel at least so far as this record shows that the verdicts were going to be cumulated until the District Court entered judgment on them. Counsel then filed timely post-trial motions.
 
 
 18
 We therefore vacate the judgment against each appellant. The question arises whether to limit the new trial to the issue of damages or to reopen the merits as well. Slater v. KFC Corp., 621 F.2d 932 at 938 (8th Cir. 1980) (and authority cited). We have reviewed the record in this case and hold not only that the evidence amply supports the jury's liability findings but also that the issues of damages and liability are not so interwoven as to require a new trial on both. See Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). We therefore remand the case for a new trial limited to the issue of damages.[10]
 
 
 19
 On remand the District Court should submit one question to the jury: What amount is Greenwood entitled to recover? Each defendant will owe Greenwood its percentage of this amount: Skie 20%, Vallery 35%, and Ace 45%.
 
 
 20
 B. Evidentiary rulings.
 
 
 21
 Appellants claim as error two evidentiary rulings made during the damages portion of Greenwood's case in chief. We address these claims to aid the District Court on remand.
 
 
 22
 Appellants first contend that the District Court erroneously admitted into evidence Robert Newland's opinions concerning the 1977, 1978, and 1979 crop losses caused by the malfunctioning of the water-transfer system. Under South Dakota law, "(t)he method of ascertaining damages for crop injury * * * is to take the value at maturity which the probable crop would have had but for the injury, deduct the value which the injured crop actually had at maturity, and deduct further any reduction in amount and value of labor and expense attributable to the reduced yield." Swenson v. Chevron Chemical Co., 89 S.D. 497, 506, 234 N.W.2d 38, 43-44 (1975). Greenwood therefore sought to prove the value at maturity which the probable crop would have had but for the failure of the water-transfer system to operate by introducing Newland's opinions on this issue. The District Court admitted Newland's opinions over appellants' objections that the opinions lacked sufficient foundation.
 
 
 23
 If a witness is not testifying as an expert, his testimony in the form of opinions or inferences need only be rationally based on his perception and helpful to the determination of a fact in issue. See Fed.R.Evid. 701, 702. The District Court acted well within its discretion in admitting Newland's opinion testimony. Appellants explored Newland's opinions at length and effectively on cross-examination. The weight to be accorded his opinions is a matter for the jury and not this Court to determine.
 
 
 24
 Appellants also contend that the District Court erred in preventing Newland from testifying to the actual amounts Greenwood received for the crops raised in 1978 and 1979, although Newland testified that he sold those crops he managed to raise in 1978 to the corporation's owners. On appeal they seem to argue that the District Court thereby foreclosed them from proving Greenwood's "actual" loss resulting from the malfunctioning of the water-transfer system.
 
 
 25
 Appellants argued below that this evidentiary ruling flowed from an erroneous interpretation of substantive South Dakota law fixing the measure of damages. Appellants' argument on appeal echoes that made before the District Court. We give great weight to the District Court's view of state law. We cannot say that it misapplied the measure of damages established by South Dakota law. We add only that, insofar as federal law is concerned, evidence is admissible if relevant, and it is relevant if it has any tendency to make the existence of a consequential fact more or less probable than it would be without the evidence. See Fed.R.Evid. 401, 402. Relevant evidence may be excluded if, in the discretion of the district court, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. See Fed.R.Evid. 403.
 
 
 26
 II. Conclusion.
 
 
 27
 The trial judge commendably handled a multitude of issues presented to him in what he accurately characterized as a "very difficult, complex case." For the reasons set forth above, we must nevertheless vacate the judgment and remand this case for a new trial limited solely to the issue of damages.
 
 
 28
 Affirmed in part, vacated in part, and remanded.
 
 
 
 *
 The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 Greenwood also alleged breach of warranty against Skie. On Greenwood's motion, however, the District Court, the Hon. Andrew Bogue, United States District Judge for the District of South Dakota, dismissed the breach-of- warranty claim against Skie before submitting the case to the jury
 Jurisdiction of the District Court was founded on diversity of citizenship and the requisite amount in controversy. 28 U.S.C. § 1332 (1976). South Dakota law governs the substantive issues in this case.
 
 
 [2]
 Skie also made third-party claims against R. Thornton Vallery, Vallery's president, personally. The District Court dismissed these claims as well as Greenwood's against Vallery personally pursuant to the parties' stipulations
 At all times pertinent to this appeal Vallery was a dealer of pipe manufactured by Ace.
 
 
 [3]
 The enumerated theories of liability were those submitted to the jury by the District Court. In response to appropriate motions the District Court dismissed other claims, counterclaims, and cross-claims made by the parties
 
 
 [4]
 See, e. g., Degen v. Bayman, 86 S.D. 598, 200 N.W.2d 134 (1972)
 
 
 [5]
 Greenwood cross-appeals, asserting principally that the District Court erred in failing to direct a verdict in its favor on Skie's counterclaim. Skie, Vallery, and Greenwood in addition raise other claims of error. We have carefully reviewed the extensive record and find these claims to be without merit
 
 
 [6]
 The 600 acres consist of two adjacent fields separated by an incline. The lower field is 350 acres in size; the upper field, 250 acres. Robert Newland testified that the distance from the dam to the center of the lower field was approximately 6,800 feet
 
 
 [7]
 At trial Greenwood introduced a March 1977 unsigned writing as evidence of the oral agreement's terms. Vallery did not dispute the existence of an oral agreement. Vallery submitted its design of the water-transfer system to Ace for final modifications and approval
 
 
 [8]
 On each theory of liability the District Court submitted special verdicts requiring the jury to assess Greenwood's damages for three elements of loss: loss of crop yield, money expended for the irrigation system, and out-of-pocket expenses. The jury found no damages under any theory for out-of-pocket expenses
 (1) To Greenwood against Skie:
 (a) For breach of contract: $26,238.40
 (b) For negligence (20 percent of
 the whole sum awarded for
 negligence): 23,177.26
 (2) To Greenwood against Vallery:
 (a) For breach of warranty: $30,611.46
 (b) For breach of contract: 30,611.46
 (c) For negligence (35 percent of
 the whole sum awarded for
 negligence): 40,560.20
 (3) To Greenwood against Ace:
 (a) For breach of warranty: $59,036.40
 (b) For negligence (45 percent of
 the whole sum awarded for
 negligence): 52,148.32
 (4) To Skie against Greenwood
 (for amount owing on
 installation contract): 5,500.00
 
 
 [9]
 Greenwood argues that the jury intended for its verdicts on the various claims to be cumulated. And in fact the District Court's instructions do contain a passage that lends itself to this construction. The difficulty with this argument is that there is simply no basis in the record upon which such an imposition of damages can be rationally grounded. There is no way to attribute particular kinds or amounts of damages, for example, to breach "of contract" as opposed to breach "of warranty."
 
 
 [10]
 We likewise leave the jury's apportionment of negligence undisturbed. On remand the District Court should award contribution on the basis of this apportionment following the jury verdict on damages. Because we leave the jury's liability findings here intact, the jury's determination of appellants' negligence precludes an award of indemnity. See note 4 supra and accompanying text