MERRILL IRON & STEEL, INC., Plaintiff and Appellee,

v.

MINN–DAK SEEDS, LTD., Defendant, Appellee and Cross-Appellant,

First National Bank of Grand Forks, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the complaint, Defendants and Appellees.

T.E. IBBERSON COMPANY, Defendant, Third-Party Plaintiff, Appellant and Cross-Appellee,

v.

ASI–KEYSTONE, INC., a foreign corporation, Third-Party Defendant and Appellee.

Civ. No. 10234.

Supreme Court of North Dakota.

May 12, 1983.

Ament & Ament, Merrill, Wis., and Murray, Olson, Larivee, Bohlman & Engen, Grand Forks, for plaintiff and appellee Merrill Iron & Steel; argued by John R. Ament, Merrill, Wis.

Brink, Sobolik, Severson & Vroom, Hallock, Minn., for defendant, appellee and cross-appellant Minn-Dak Seeds; argued by Dennis M. Sobolik, Hallock, Minn.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant, third-party plaintiff, appellant and cross-appellee´ T.E. Ibberson Co., argued by James L. Lamb, Grand Forks.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for third-party defendant and appellee ASI-Keystone, Inc.; argued by Paul G. Woutat, Grand Forks.

PEDERSON, Justice.

This is an appeal by T.E. Ibberson (TEI) and a cross-appeal by Minn-Dak Seeds, Ltd.

(Minn-Dak) from a judgment entered on a jury verdict awarding damages to Minn-Dak and Merrill Iron & Steel, Inc. (Merrill) and from an order denying both parties' motion for new trial. We affirm.

Minn-Dak contracted with TEI to design and construct a plant for processing and cleaning mustard seeds. The agreement consisted of two contracts, a "construction management agreement" and an "engineering contract." The construction agreement provided that TEI was to supervise all construction, take bids for subcontracted work, and award subcontracts upon written approval of Minn-Dak. TEI subcontracted with Merrill to provide bins for storing seeds at the new plant.

The storage bins did not prove satisfactory. Water penetrated gaps in the sides of the bins making mustard seed stored inside wet and unusable. Cleaned seeds mixed with uncleaned seeds in neighboring storage bins requiring Minn-Dak to repeat the cleaning process. TEI terminated Merrill's subcontract upon discovering that the bins leaked.

Minn-Dak refused to pay for the bins. Merrill then filed a mechanic's lien against the property and sued TEI, as the prime contractor, Minn-Dak, as the owner, and First National Bank of Grand Forks, as the mortgagee of the property. Merrill alleged that a contract existed which had been performed and that payment on the contract was due and owing. Merrill also sought to foreclose on the lien.

Minn-Dak, in turn, counterclaimed against Merrill alleging negligence and cross-claimed against TEI alleging negligence and breach of contract.

TEI then cross-claimed against Minn-Dak alleging negligence on Minn-Dak's part and breach of contract. TEI also argued that Minn-Dak assumed the risk of damages because they insisted that Merrill bins be used. TEI then sued ASI-Keystone, Inc. (ASI) alleging that the leakage problems were caused, in part, by a defective bin level monitoring system that had been installed to measure the contents of each storage bin.

The central issue presented to the jury was who bore responsibility for the storage bin leakage. To resolve this issue, the court submitted an eighty-question special verdict to the jury pursuant to Rule 49(a), NDRCivP.

In its special verdict, the jury held TEI solely responsible for the storage bin leakage and found that:

1. TEI breached its contract with Minn-Dak;

2. TEI negligently constructed the plant;

3. TEI supplied defective goods;

4. TEI⋅ breached express and implied warranties made to Minn-Dak;

5. TEI breached its contract with Minn-Dak for the bin level monitoring system; and

6. TEI negligently selected and installed the bin level monitoring system.

The jury also found that ASI breached its contract with TEI for the bin level monitoring system and that ASI negligently selected and installed the system. TEI and Minn-Dak made motions for new trial pursuant to Rule 59(b), NDRCivP. It is from a denial of these motions that the parties appeal.

■ Motions for new trial must be based upon one or more of the grounds enumerated in Rule 59(b), NDRCivP. TEI asserted three grounds in its motion: (1) errors in law occurring at the trial, (2) insufficiency of the evidence to support the verdict, and (3) irregularity in the proceedings. When reviewing an order denying a new trial, we determine only if there was a manifest abuse of discretion. *Dahlen v. Landis,* 314 N.W.2d 63, 67 (N.D.1981); *Dehn v. Otter Tail Power Co.,* 251 N.W.2d 404, 411 (N.D. 1977); *Stee v. "L" Monte Industries, Inc.,* 247 N.W.2d 641, 645 (N.D.1976).

### I.

■ Errors in law occurring at trial may justify granting a new trial if the error is patent, obvious, or evident from the record. *Cendak Agri-Service, Inc. v. Hausman,* 275

N.W.2d 326, 329 (N.D.1979); *Bohn v. Eichhorst*, 181 N.W.2d 771, 772 (N.D.1970). TEI claims that the issues raised in this case were not properly submitted to the jury. Questions regarding negligence issues, according to TEI, should not have been included in the special verdict.[1]

We do not agree. Courts often encounter cases in which both issues of tort and contract are presented to the trier of fact. See *e.g. Dittmer v. Nokleberg*, 219 N.W.2d 201 (N.D.1974) (builder sued for breach of contract and claimed that the house had been negligently constructed); *R.E.T. Corp. v. Frank Paxton Co., Inc.*, 329 N.W.2d 416 (Iowa 1983) (builder sued for breach of building contract and for negligently supplying defective goods); *City of Hot Springs v. Gunderson's Inc.*, 322 N.W.2d 8 (S.D.1982) (builder sued for negligent design and construction of a golf course and for breach of contract). A jury may find for a party on each of two grounds: tort and contract. *R.E.T. Corp.*, *supra*, 329 N.W.2d at 420. Thus, the court was not precluded from posing negligence questions in the special verdict merely because breach of contract questions were also included.

There is a clear distinction between the two theories of recovery "in that damages not even anticipated are recoverable in tort, while only such damages as were reasonably contemplated by the parties at the time of entering into the agreement are recoverable for a breach [of contract]." 25 CJS Damages § 80 at 888 (1966); Section 32–03–09, NDCC (measure of damages for breach of contract); Section 32–03–20, NDCC (measure of damages for tort). Double recovery for breach of contract and negligent construction is impermissible since a party may not recover twice for the same injury simply because he has two legal theories. See *Greenwood Ranches, Inc. v. Skie Const. Co.*, 629 F.2d 518, 521 (8th Cir. 1980); *Clappier v. Flynn*, 605 F.2d 519, 529 (10th Cir.1979). See generally § 32–03–36,

NDCC. There is no claim that the court allowed damages without distinction between tort and contract or that the damage award resulted in double recovery. Thus, we find that the court did not err in submitting both theories of recovery to the jury.

## II.

TEI contends that the court should have granted its motion for new trial on the ground that the evidence was insufficient to justify the verdict because the evidence did not support the jury's finding that TEI was 100% negligent and that Minn-Dak and Merrill were free of negligence.

As to the court's denial of TEI's motion, the credibility of the witnesses and the weight to be given to their testimony are questions of fact for the jury to determine. *Kresel v. Giese*, 231 N.W.2d 780, 784 (N.D.1975). In determining the sufficiency of the evidence to sustain a jury verdict, we must view the evidence in the light most favorable to the verdict. *Vallejo v. Jamestown College*, 244 N.W.2d 753, 757 (N.D. 1976); *Kresel, supra*. Our review of the facts is thus limited to considering whether there is substantial evidence to sustain the verdict. If there is substantial evidence, we are bound by the verdict even though there is conflicting evidence. *Vallejo, supra; Kresel, supra; Johnson v. Monsanto Co.*, 303 N.W.2d 86 (N.D.1981).

After examining the evidence, we conclude that there is sufficient evidence to sustain the jury verdict. Testimony at trial indicated that TEI's plant design was incompatible with the storage bins and bin level monitoring system used. Evidence also showed that bin leakage was due to improper construction by TEI, including missed welds and holes in the pipes, rather than from the bins themselves. Merrill also presented testimony indicating that leakage was caused by the vacuum dust system installed by TEI which created negative pressure inside the bins drawing water up-

---

1. TEI also argues that the court erred by instructing the jury on negligence issues. Because we find that the court properly submitted the case to the jury on negligence and contract theories, the court did not err in instructing the jury on negligence issues.

hill between the fittings in the side panels. Based upon this evidence, a jury could conclude that TEI was solely responsible for the storage bin leakage and that TEI negligently designed and constructed the plant. Accordingly, the verdict on the question of negligence is affirmed.

At the time of trial, Minn-Dak owed TEI $25,000.00 on the construction management contract. This amount represents twenty percent of the total management fee which, according to the contract, was "to be retained by Owner [Minn-Dak] until the work is completed and accepted . . . ." TEI asserts that the question of whether it was entitled to receive this amount should have been included in the special verdict. TEI could then have offset the amount due under the contract from the damage award. Minn-Dak, however, argues that TEI's work was never completed nor accepted and therefore TEI's claim for offset of $25,000.00 was properly denied.

■ Generally, when a building contractor has substantially performed the contractor may recover the contract price less the expense of repairing the defects or omissions. *Storebo v. Foss,* 325 N.W.2d 223, 225 (N.D.1982). If the contractor has failed to subtantially perform, he may not recover at all under the contract. *Dittmer v. Nokleberg,* 219 N.W.2d 201, 206 (N.D.1974). Similarly, if the contractor's defects are intentional, willful, or so serious as to deprive the property of its value or intended use, the contractor is not entitled to offset. *Dittmer, supra,* 219 N.W.2d at 209.

■ The question of whether there has been substantial performance is one of fact and "is to be determined in reference to the entire contract and what is done or omitted under it, and not in reference to one specification." *Dittmer, supra,* 219 N.W.2d at 207 (quoting 13 Am.Jur.2d Building, Etc. Con-

tracts, § 43). The issue of whether TEI substantially performed the contract was not specifically addressed in the special verdict form.[2] The court found, pursuant to Rule 49(a), NDRCivP, that "TEI did not complete the work on the construction of the mustard seed plant."

■ Rule 49(a), NDRCivP, provides that if the court "omits any issue of fact raised . . . by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury." As to any issue omitted without a demand, "the court may make a finding." TEI did not submit a proposed question specifically asking whether it was entitled to payment of $25,000.00 on its contract with Minn-Dak. A reference to this issue appears in the following requested special verdict:

"Do you find that TEI failed to pay Merrill any sum required by the subcontract between them?

Yes ___

No ___

"If your answer is 'Yes', do you find that Minn-Dak complied with the terms of its contract with TEI and paid it such sums as it was required to pay for labor or material supplied by the plant?"

TEI also did not submit a specific question on whether it substantially performed the contract with Minn-Dak. Reference to this issue appears in its second requested special verdict: "Do you find that TEI failed to perform or breached its contract with Minn-Dak or breached any warranties contained in that contract?"

After reviewing the special verdict we find that, when taken as a whole, the questions proposed by TEI are properly addressed. Because TEI apparently did not request a specific question on whether it

---

**2.** The jury was asked whether Merrill substantially performed according to the terms of its subcontract with TEI and the jury found that Merrill had. The jury was also asked to determine the "sum of money, if any, . . . necessary for [Minn-Dak] to repair and complete the mustard seed plant in accordance with the terms of the Construction Management Agreement

. . . ." The jury awarded the following amounts:

| | |
|---|---|
| Placement of siding on building | $56,280 |
| Correction of product and/or foreign matter moving from bin to bin | $13,050 |
| Cost to Minn-Dak for turnheads | $    700 |

was entitled to $25,000.00 from Minn-Dak, or specifically demand that the issue go before the jury, we conclude that the court did not err in making a finding on the issue pursuant to Rule 49(a), NDRCivP.

Accordingly, we review the court's finding on this issue in accordance with Rule 52(a) and note that, on appeal, the trial court's findings are given the same weight as a jury verdict. *Stee v. "L" Monte Industries, Inc.,* 247 N.W.2d 641 (N.D.1976); *Kleinjan v. Knutson,* 207 N.W.2d 247 (N.D.1973). We find that evidence presented at trial sustains the finding that TEI did not substantially perform the contract. The evidence also sustains the finding that the defects in the plant, including the bin level monitoring system, were the result of TEI's negligent design and construction. Thus, because TEI failed to substantially perform in accordance with the terms of the contract, the court properly denied TEI's claim for offset.

In its cross-appeal Minn-Dak argues that the jury's verdict should be modified to allow recovery for additional damages Minn-Dak claims to have sustained.[3] Minn-Dak contends that because the "evidence is such that a jury can draw but one conclusion from it, the award should be modified." We do not agree. Much evidence on the issue of damages was presented, some of which was conflicting. Therefore, we cannot find that the jury could "draw but one conclusion" from the testimony presented. Because the evidence is sufficient to sustain the jury verdict, the damage award should not be modified.

### III.

An irregularity in the proceedings of the court, an order of the court, or abuse of discretion which prevents a party from having a fair trial may justify granting a new trial, but only when the irregularity is "patent, obvious, or evident from the record." *Bohn, supra,* 181 N.W.2d at 772. See

also *Cendak Agri-Service, Inc., supra,* 275 N.W.2d at 329.

TEI alleges that the court erred in refusing to admit testimony of Duane Loven, a Grand Forks CPA, to rebut testimony presented by Minn-Dak on the issue of damages. Loven was to testify that the accounting methods Minn-Dak used to determine the costs of recleaning seeds were not "in accordance with general accounting standards." The court excluded Loven's testimony because he had not been listed as a witness prior to trial, although the pretrial order entered pursuant to Rule 16, NDRCivP, directed that witness names be provided.

Rule 16, NDRCivP, allows the trial court to hold a pretrial conference designed to simplify issues, limit the number of expert witnesses, and consider other matters "as may aid in the disposition of the action." After conference, the court "shall make an order which recites the action taken at the conference . . . ." Rule 16, NDRCivP. The pretrial conference is an effective method to shorten and simplify litigation, "saving time and expense to the litigants and valuable time and resources of the courts." *Fiebiger v. Fischer,* 276 N.W.2d 241, 245 (N.D. 1979).

Unlike the rules of discovery, there are no specific sanctions established by Rule 16, NDRCivP, for violation of pretrial orders. *Cf.* Rule 37, NDRCivP (providing sanctions for failure to make discovery). However, the court has broad discretion in limiting the number of witnesses, *Fuhrman v. Fuhrman,* 254 N.W.2d 97, 101 (N.D.1977), and the exclusion of witnesses is generally discretionary with the court. See *Simonetti v. Rinshed-Mason Company,* 41 Mich.App. 446, 456, 200 N.W.2d 354, 360 (1972). The refusal to admit Loven's testimony was thus within the discretion of the court.

Finally, Rule 61, NDRCivP, provides that no error in admitting or exclud-

---

**3.** The jury awarded Minn-Dak $70,030.00 in damages for repairing defects in the plant, $12,-275.00 for seed shrinkage, and $40,033.00 for the cost of recleaning seed. Minn-Dak also received $70,181.00 as a refund for the ASI bin level monitoring system and for loss of product due to the faulty system.

ing evidence or defect in any ruling is ground for a new trial unless refusal to take such action appears to be "inconsistent with substantial justice." Because we find that excluding Loven's testimony was not "inconsistent with substantial justice," we conclude that the court properly denied TEI's motion for new trial.

We have reviewed the remaining arguments. raised by TEI and Minn-Dak and find no merit to their contentions. Because we have concluded that TEI and Minn-Dak cannot prevail on any of the issues raised on appeal, we must also conclude that the court did not abuse its discretion in denying the motion for new trial.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.